UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK (BROOKLYN)

| | |
|---|---|
| SHAMOLI KAPOOR,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL MATTHEWS JEWELERS OF KINGS PLAZA, LLC, et al,<br><br>Defendants. | Case No. 1:22-cv-05027-HG-TAM<br><br>Brooklyn, New York<br>June 13, 2024<br>2:16 p.m. |

TRANSCRIPT OF INITIAL SETTLEMENT CONFERENCE HEARING
BEFORE THE HONORABLE TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Joshua J. Lax, Esq.<br>Liakas Law, P.C.<br>40 Wall Street<br>50th Floor<br>New York, NY 10005 |
| For the Defendants: | Bhavleen Sabharwal, Esq.<br>Law Office of Bhavleen Sabharwal, P.C.<br>27 Centre View Drive<br>Oyster Bay, NY 11771 |
| Also Appearing: | Mohammed Butt<br>Naila Butt<br>Zuha Butt<br>Laraib Butt<br>Charles Hickerson<br>Jake Burns |
| Clerk: | ALG |
| Court Recorder: | Electronic Sound Recording |

Transcription Service: Chris Hwang
Abba Reporting
PO Box 223282
Chantilly, Virginia 20153
(518) 302-6772

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(Call to order at 2:16 p.m.)

THE CLERK: This is civil cause for an initial settlement conference, docket 22-CV-5027, Kapoor v. Michael Matthews Jewelers of Kings Plaza, LLC, et al.

Will the parties please state their appearances for the record starting with the Plaintiff?

MR. LAX: Thank you. On behalf of Shamoli Kapoor, I am Joshua J. Lax of Liakas Law. Just for the Court's information, I'm joined by two members of my office in addition to Ms. Kapoor. Neither are admitted in Court. They're just observing today.

THE COURT: All right.

MR. LAX: Thank you.

THE COURT: And in terms of your client's appearance, would you like introduce me?

MR. LAX: Yes, Your Honor, this is I believe you may have spoken actually on the record at some point, but this is Ms. Shamoli Kapoor.

THE COURT: We did speak on the phone.

MS. KAPOOR: Yes.

THE COURT: Nice to meet you in person.

Thank you, Mr. Lax. And just for clarity, who is here with you from your firm?

MR. LAX: Sure, so it's Charles Hickerson (phonetic) and Jake Burns (phonetic).

THE COURT: All right, thank you.

And for Defendant?

MS. SABHARWAL: Good afternoon, Your Honor, Bhavleen Sabharwal of the law office of Bhavleen Sabharwal, P.C. I'm joined by my client Mohammad Butt. I also represent Naila Butt, Zuha Butt, and Laraib Butt.

THE COURT: All right, well, good afternoon to you. Would you like to introduce me to your client?

MS. SABHARWAL: Sure. Mohammad Butt, this is Judge Merkel. She will be presiding over the conference today.

THE COURT: Thank you.

Good afternoon to you all.

So as you all know, we're here today for a settlement conference. So hopefully, we're here in the spirit of cooperation to see if there's a way to resolve this case.

I know that the allegations in this case are very serious and that there are probably -- there's a lot of history here between the parties, but it is my hope that both sides can keep an open mind as we work through the possibility of seeing if there's a way to get the case resolved or at least start to narrow the issues in the case.

So just to give you a little bit of an overview of what the afternoon will look like, we have reserved the rest of the afternoon for this case. I was wrapping up a couple other matters that were time sensitive to make sure that I could

devote my full attention to this case for the duration of the time we have. So we'll be spending, you know, two to two and a half hours this afternoon to see where this case could perhaps go.

So the first thing we'll do is start here in this courtroom all together. We are currently on the record. So everything that's said right now in this portion of the proceedings is being recorded.

And I would like the parties at the moment to make any opening remarks that they would like to make, again, in the spirit of cooperation for the purpose with which we're here.

After those opening remarks, we will go off the record and we'll go out into breakout sessions. So I'll spend some time speaking with the Plaintiff's side. Then I'll spend some time speaking with the Defendant's side.

And all of the conversations after we go off the record will be strictly confidential for the purposes of settlement. They are protected under the Rules of Evidence and I would not share anything that is said during the settlement conference with anybody else, not even another judge.

So you can rest assured that you have complete confidentiality during the portion of the proceedings that will be off the record.

As I noted a moment ago, the allegations in this case are very serious. So the process of settlement can be very

difficult. And I want both of the parties in particular to really hear me out.

Based on my experience, I predict that both sides may be angry about the other side's position. Maybe it will even hurt to be asked tough questions by me or me acting as the messenger for the other side.

The important thing I want everyone to recognize is that this is a process. And if you start to feel emotions creeping into the conversation or you get upset, that's normal. It happens. It happens to everybody in settlement conferences.

I note that the two individuals who just came in the room are my interns. So they are aware of the Court's duties of confidentiality and will not share anything that happens today with anybody.

So the point I'm trying to make is that if you start to feel upset, rest assured that's completely normal. What I would ask is that you recognize what's going on and try to take a moment to objectively evaluate whatever's being asked of you.

Keep in mind that if this case does not resolve, there are really only a few ways for federal cases to go away. Federal cases can be resolved by settlement. They could potentially be resolved by motion practice, which requires that the side making a motion be able to show that there are no facts in dispute with regard to the case.

And based on what I know about this case, it's very

fact intensive. So it does not seem likely to me at this juncture that this is a case that would be resolved on motions.

So the two options for resolving this case would then be a settlement or a trial. So what I ask both sides to do the whole afternoon is think about how things would go if the case doesn't get resolved through a settlement, if the case were to go to trial.

And it really is a process. And the process of trial versus settlement are very, very different. Here today, as I mentioned a moment ago, everything that's said will be confidential. In a trial, that is not the case. It is a public proceeding and it will be recorded and transcribed.

Today, both sides will have the opportunity to give me their views on the case in a confidential somewhat informal fashion.

That is not the way it will go if there's a trial. If there's a trial, the only information that the trier of fact will be able to consider and the trier of fact in this case would be a jury.

So a jury from the community would be able to consider only evidence that is presented through witness testimony or exhibits. And that's it in terms of what they could base their case on -- base their decision on. So it's a very different process.

In this setting, the parties are in control. The

parties get to decide the outcome of the case. If the case goes to trial, you lose that control completely. It is up to the jury what's going to happen. It is up to the judge to determine what evidence to let the jury see. And whatever the outcome is is the outcome.

For the Plaintiff, I want to note something in particular with regard to trial, too. Even if the case goes to trial, if there were a verdict in your favor, you would need to have sufficient evidence, not only to win the trial, but also to sustain the verdict.

So if there was a verdict in your favor, the jury decided to award money, for example, there would be -- there would need to be enough evidence for the judge to then find in your favor and that the verdict is appropriate and that could then reviewed on appeal.

So trial can take a really, really long time even if you were to win, Ms. Kapoor. So that's something I want you to really think about because trials can take years to get scheduled and be resolved fully all the way through the appellate process.

So another consideration I want you to be thinking about today is the value of closure. And not having this in your life anymore and what dollar value we can attach to that.

It's very hard to figure out an appropriate dollar value for human interaction, but unfortunately, that's one of

the few things that is available under the law as a potential remedy. So that's part of what we're going to be talking about today of course.

So, as I noted, there are many differences between trial and settlement. And I want you to be thinking about those differences as we go through the day and thinking about whether or not this is a case that should go to trial or whether there is some sort of resolution that could bring this case to closure and provide some peace for the parties.

I know there are pending state court actions. I'm not expecting we'll get everything wrapped up today, but I am willing to work with the parties and also the state court lawyers if they want to come a future settlement conference to see if we can just help both sides to completely wrap up whatever happened so that you both can turn the page and move on to a new chapter in your life, okay?

So those are my goals for the day. And I do want to invite the parties to make any opening remarks that they would like to make, again, in the spirit of cooperation and in good faith effort to settle the case.

So Mr. Lax, is there anything is there anything the Plaintiff would like to say?

MR. LAX: Yeah, I do. Are we going off the record for this part or?

THE COURT: Usually I do this on the record.

MR. LAX: Okay.

THE COURT: But if there's anything sensitive you'd like to share as to numbers, we can off the record.

MR. LAX: Okay.

THE COURT: So either way is okay with me.

MR. LAX: I don't even know how I'm going to address numbers at this point.

THE COURT: Yes.

MR. LAX: So, all right, thank you, Your Honor.

Thank you, everyone.

All right, so my name is Josh Lax. Once again, I know, Mr. Butt, we've never met. And I'm going to basically -- I hope -- I'm not trying to speak -- I'm going to address you, but it's not really a communication to you. It's you and your family and your attorney.

But what I want to do today is I don't want to talk and I'm not here to say Ms. Kapoor's right, you're correct. That is not the function of what we're doing.

You and her lived these circumstances. You're the only ones in the room that know what actually happened.

What I'm here to do today is to talk to you, and I believe you're a businessman, is to address kind of what we would call the risk reward situation that is existing in this case.

Again, I'm not one for sweeping declarations. I'm

not here to tell you you're wrong and I'm not here to say Ms. Kapoor's necessarily right. I can only talk about what the evidence is developing and what we're seeing and what the arguments that are going to be made are.

And that's what I want to address to you today, so you can get a glimpse into what the Court called the spirit of cooperation, where we think this case is going.

And you can make your assessment then if you and your family want to settle or if you think that a trial is the way to go.

On that note, just again, because economics are important at this stage, one thing just to know about me and my role in this process, I'm not the usual lawyer.

So for example, I think when this case started, there was a private attorney who was going to be paid a contingency fee or attorneys' fees under one of the statutes if they won, right?

That is not really what I am. I'm not here today to try and get like my own profit. I want to do the best for Ms. Kapoor. I'm appointed or I'm representing her under the Court's pro bono rules. And as a consequence, I actually don't get anything if this settles today or if it settles at any point before the trial.

The only time you might get compensated and it's a maybe is if we go all the way, Ms. Kapoor obtains a judgment,

the judgment is upheld and the Court awards us attorneys' fees. That's it.

So at this point in the process, I'm here just for her. And that's where this is all coming from, right?

And I know because she's suffering one way or another and you can have your own beliefs about whether that's genuine or not. You can have your own beliefs about the voracity of it, but I'm here to tell you I spent a long time with her and she's suffering either way.

And so, what I want to do is I want to help her get to this point. And that's why I'm being open with you and your counsel about what we see in this case and what our position is to help you understand where we're coming from.

The last thing that I'll say is, you know, this -- there's another judge in this Court that talks about cases and the life of a case and what it does to the people that are involved. And she kind of refers to it as a -- almost like the battery power in your cell phone going out. Like it has a real toll on you.

So, you know, again, Ms. Sabharwal and I represent real people. We have real people with real lives and we're trying to do the best that we're doing.

So, again, what I'm about to talk about is meant not to criticize you, because I'm going to talk about credibility and things like that, but it's meant to show you just what it

is we're looking to do and where we think we can go so you can decide, you know, what the risks and rewards are for yourself and for your family.

All right, so as you are aware, the allegations in this case basically boil down to the following, that you and Ms. Kapoor had a relationship that started in some sort of professional or business format in 2009.

Between 2009 and 2013, and I'm just doing rough timeline here, between 2009 and 2013, you were working with her in some capacity.

What that was seemed to change at times and, you know, I'll just say we produced almost like 4,000 pages of documents that, you know, they show various projects together, various business ventures, various roles Ms. Kapoor had.

So it's clear and no one's real going be able to get away from the fact that you had some sort of economic link to Ms. Kapoor.

What the evidence also appears to show is that at some point in 2012 and 2013, Ms. Kapoor was getting set up with various business adventures, sorry not adventures, ventures.

The various business ventures were causing her to put in money and Ms. Kapoor believes that you, maybe others, but definitely you and your family took that money. So I know you're fighting part of this out in state court, but it is part of this case here.

Thirdly, and we'll get back to this in a big way because I know that this is probably the hardest thing to stomach if I was in your position and I sympathize with that, but we're all adults and we need to talk about this is that Ms. Kapoor says that at some point in 2012 and 2013, she was the victim of a sexual assault by you and perhaps others and that it was recorded and photographed in some way.

And that this in addition to the taking of her passport were in fact a means by which you were able to, one, retain the money that you had taken through some of these business deals.

Two, transfer money and some of her other property away from her into various places, your family's bank accounts, whatever it is.

And three, to basically force her to do household work and basically become like a slave. There's no other word for it. And that that continued for a period of time until she was able to get away.

Obviously in 2018, she brought two lawsuits against you. One -- there may be more involving promissory note and $520,000 transfer.

Again, it's part of the timeline. I know there was the specific documents and transactions at issue are being addressed in the Queens County state court. However, it does play a role here in the facts and in the narrative.

All right, so that basically is our timeline in how we view the case just so you know context of what I'm about to talk about.

A big conversation between your attorney and I was actually a lot focused on what the parties had to say. So I just gave you a rough outline of Ms. Kapoor's description of her relationship with you and your family. You know, I was asking what is Mr. Butt? What do the Butts have to say?

And we heard various things. And I'll say that it came in various ways. And none of it was actually (indiscernible), so you're not committed to it.

But what we do have because there's this ongoing litigation in state court and in addition to some other things, we have some of your words about your relationship with Ms. Kapoor.

And here's where I get into sort of you got to decide if you're going to roll the dice on this stuff or if there's a risk for you, an actual financial risk. And we can come back to just general numbers of where these cases sometimes wind up in a second.

But I'll give you an example. So in September 2020, you submitted an affidavit with your attorney to try and overcome I think a default or something because the prior attorney had messed up the case or something like that. You may remember that. I'm again paraphrasing.

So you describe in this affidavit that was filed in state court in September 2020 that Ms. Kapoor met with you and begged you for a job. She stated that she was facing severe financial hardship. You were a member of the community. She was a member of your community.

And so, as a result, you decided out of the kindness of helping people in the community to give her a job as a salesperson and hope -- and I think your words are helped her financially such as paying her apartment's rent.

And then, you go on to describe that this was all a sham and you accuse Ms. Kapoor of a, quote, well devised scam in order to win your confidence.

And you say that by her cleverness, she became the must trustworthy employee and was promoted to the status of completely in charge of the business.

And that she goes on to basically take control over you. She -- you get sick in 2012. You have a heart attack in 2016. She uses those situations to take further action. And she steals all your jewelry, your funds, and never pays you back for money that you lent her.

And you accuse her of cheating you. You say she committed fraud. You say she did all this stuff. And that basically, when I read this, I'm sort of hearing echoes of what she says about you, which is you're both pointing the finger at each other and saying the other one trafficked me.

But then, you go on to say this really interesting thing is that she owes you $6.25 million. And we'll come back to that because that was the subject of a recent set of documents we received that also I think plays a role in all of this.

And you say she started harassing and blackmailing you to scare you that you would not -- so that I might not -- I think your words are I might not demand the funds and jewelry back from her.

So those are what you say happened. She in 2009 had the forethought and the wherewithal to embark on a several year scam devised to take everything that you have, jewelry, money, and so forth, right?

And so, I assume that you will to continue to adhere to that version of events because, one, you've sworn to it in state court.

And two, I'd recently received a document that I don't really know what it is, but it looks like a letter to a district attorney's office that kind of describes this whole series of events from your perspective in the same way, but just with more detail and further accusations about her family being involved and stuff like that.

Now the -- so you got to ask yourself, right, and what we as lawyers do, is we take -- we look at a story like that and we say to ourselves, well, first of all, in its own

right, does it make sense, right? Does it make sense that someone who is completely destitute would come to you for a job as a salesperson and, you know, you would just lob on them responsibility, responsibility, responsibility and that it's all for several years a pattern of deception, right?

I would tell you that that's a hard sell. Again, I don't make sweeping generalizations, but just from our perspective, we don't think that's going to get very far.

And it's also not going to get very far because in practice, it seems that, you know, not just, you know, giving her more and more responsibility. You continue to have like business relationships with her over the course of four -- I think what amounts to four years.

You entrusted her with cash. So, for example, we have a document that we produced several months ago that basically is a memo to you -- to your various stores that says that you're going to have Ms. Kapoor coming around with $2,000 to give to each store manager in petty cash, right? Trusted her with that.

We have another letter that you signed, also produced like I think at the same time, that says you -- that she's been a full-time employee from 2009 and that you're sending her in 2013 to an international -- some sort of trade show in Canada. So this is written to the Consulate General of Canada.

You also tell them that you pay her $80,000 a year,

which is interesting in the context of the case. We can come back to that.

We have another letter that you let everyone know. Now you said in this affidavit that she was a salesperson, but on November 9th, 2009, you issued this memo that she's starting on Tuesday, November 10th, 2009 not just as a salesperson, but working for, you know, doing inventory for all stores, coordination for all stores, and repair work and she's going to work directly under you.

Now why is this important? You may say small detail, who cares? What is the deal, right? But this is the -- this is where you got to think about it, right?

I didn't say this before, but one of the things Ms. Kapoor says is that in this early phase, you meet her and you tell her come with me, I'll train you on how to do stuff. You'll work with me.

And you obviously knew that Ms. Kapoor's family was in the jewelry business in India. So she had ties to it. She has resources, things like that, right.

So it's not that she's so -- the difference between a salesperson in all of this is if you're saying a salesperson, that's supposed contradict what she's saying. But what we have in the contemporaneous record is actually something that confirms what she's saying.

So, again, I'm not telling you to say, you know, I'm

not saying you're wrong or she's right or anything, but I'm just pointing out to you these are the things that exist that you will be looking at if we get to a trial that we're going to be talking about.

One of the other things she says that is you promised to and in return for her returning money to you from her salary or never taking any pay to begin with, is that you would sponsor her family and put forth the resources to ensure that her family could immigrate to the United States.

Well, I don't know if you deny that or not, but if you do, just be aware that we have a memo that you signed as part of Garav (phonetic) Kapoor's application to come to the U.S. as a student that he's a family friend of yours, right? And you're swearing to that.

So, again, my point is not to say, you know, that you must accept something. These are just the risks, right? So if you're going to say that this is what happened, then we have this to contradict you.

If we are successful in contradicting you, a jury rejects your testimony and you may lose the case. That's all the reason I'm pointing this stuff out to you. And that's what the Court I think wants to do is be open with each other about what we're thinking.

And again, you're free to reject everything I'm saying, but this is just -- we're not going away. You should

know that.

You know, I could go on. I have other documents with me we can talk more about, but you know, the -- you know, business agreements, transfers, things like that all cut against the idea that like there was some underhanded scheme by Ms. Kapoor to divest you and your family of all your liquid and material assets and your land or whatever, you know, what the story is.

And so, let me get back to that, right? So a week or two ago, I received this packet of documents from your attorney.

And one -- again, it contained this letter that purported to be writing to like a district attorney something about that you've all said Ms. Kapoor worked on you.

And along with it came these series of checks. And I understand I didn't print them out, but I pull them up on the computer and maybe Ms. Sabharwal has copies of them.

And the story that is documented and purports to by you to this ADA is that Ms. Kapoor post-dated three different checks to you in various amounts. There were two for $600,000 and I referenced this earlier, the $6.25 million that she supposedly gave you as a guarantee.

Now again, I'm here to talk about risk and reward, right? Benefit reward, benefit and risk, what you have, okay?

The hand -- if you look at the production, she may

have it for you, you can look at it later, if you look at the production and the documents that are in it, you know, I think everyone knows, Ms. Kapoor certainly knows that the handwriting on those checks are not hers. They belong to somebody else, right?

And so, again, you know, if the position of the Defendants is that these are legitimate, then they're going to have, you know, the -- you then have to get over the fact that it's like Henna Heter (phonetic) or somebody's handwriting as opposed to Ms. Kapoor.

I mean, you just see -- I know her handwriting. We produced lots of documents with Henna Heter's handwriting. It's all there. You know, so again, things to think about when, you know, you're fashioning a potential resolution.

Now another big issue in this case that I want to address, and again, we have the documents to address it, is the idea that Ms. Kapoor is sour over -- and I'll say there was a time we're being told not that she was, you know, a criminal mastermind. It was more that she had been felt aggrieved over something in your business interactions, right and that she fabricated the tale of being trafficked, the sexual assault, the physical assault. All of it was fabricated to help support her claims about these business deals gone wrong so to speak.

I get that that is maybe something of what is still being said, but you need to -- what I point out to you is

within the documents that have been produced, there are a lot of things that come from years ago that had Ms. Kapoor reporting the acts that she says happened now. And I want to review a few of them with you.

So, first of all, in 2018, she went to I believe it's the 111 Precinct. And the 111 Precinct took a complaint with her.

And by the way, this document is not from us. This is -- Ms. Kapoor obtained this prior to working with me a series of -- she did a series what they call FOIA request. And this is one of the documents that we -- that she received.

It basically says in 111 Precinct, I don't know what S/H is, but complaining victim states between 2013, 2016, she was raped by employer Defendant Mohammad Butts on multiple occasions without consent.

CV, that's complaining victim, states was raped at residence at Mohammad's residence at 6342 253 Street, Little Neck, New York, 11364.

CV further states Mohammad and Mohammad's spouse did put drugs in CV's food unknowingly and without consent of CV causing CV to fall asleep.

CV states while asleep from drugs, Mohammad did sexually assault CV using objects, anal sex, oral sex, and penis to vagina while being videotaped without consent.

CV states when awake Mohammad did show CV video of

unconsented sexual assault. Detective Liu (phonetic) of Queens SVU notified. Lieutenant Arndt (phonetic) at desk on scene.

Now I know in the affidavit you referred to Detective Liu and Detective Liu deciding not to continue with the investigation. I recognize that. And we'll come back to that in a second.

In November of 2017, Ms. Kapoor sent a civilian crime report to the U.S. Attorney's Office. She identified herself. She identified you and your wife.

And this is what she stated to them. Fraudulent bank transfer of $520,000. Copy of statement is attached. Blackmail and I can't read this, but it says took control over my safe deposit boxes. I had $2,000,000 jewelry in my safe deposit boxes. Please see attachments.

And it's dated August 17th, and it's signed, sorry, I'm sorry, it's signed November 7, 2017.

And it says D.A. Office has been given $520,000 fraudulent transfer case in August 2017, no result yet.

In addition to that, connected to those documents are emails with -- that counsel at medcounsel.org discussing Ms. Kapoor's need to get assistance because she's a victim of sexual assault and she's without resources as one is when they escape from sexual assault.

And she provided narratives to all these folks detailing what she is saying in this case to all of them.

Then on the 23rd of September, 2017, Ms. Kapoor also submitted a description of her history with you and your family to the FBI.

On February 2nd, 2018, she got a notice of confirmation as a human trafficking victim in New York state, which essentially I believe is that she needed services. And the State, having reviewed her description of events, determined that she qualified as a human trafficking victim in New York state. I'm not saying you're bound by it or it's a judicial decision, but --

THE COURT: What was the year, Mr. Lax?

MR. LAX: That -- the notice that she's been confirmed to be a human trafficking victim is February 2nd, 2018.

THE COURT: Thank you.

MR. LAX: Now, again, I mentioned this earlier. She, you know, she reported this to police. And I know that, you know, the Defendants take a position that the police kind of rejected her claim.

I don't know if that's true. I haven't actually seen the paperwork or spoken to the detective that purports to have exam -- to have investigated the case, but there's another set of documents that we've obtained.

And those are the treatment records that relate to Ms. Kapoor's counseling. And again, she talks about at length

all the different things that she's been saying in this case.

Added to that, she talks to counselors going back again to 2018, how she's made reports about this situation with you and your family. And it's causing her anxiety and depression that nobody believes her.

And so, with all of that, you know, you have documented before this case was ever filed, before the Adult Survivors Act allowed her to amend her complaint to bring the sexual assault claims, we have her reporting to government officials, to medical treaters, counselors, what have you, that this all happened.

Now you could say, you know, it's all fabricated, but at some point, it's going to be hard to convince the jury, the judge, whoever that someone is this depraved that they can go around into the federal government, the state government, the city government, various, you know, counselors and you know, make up a whole story in the type of detail she's presenting it.

So, again, I'm not saying you have to believe or accept what I'm saying, but just consider how easy is it going to be to convince people that there's nothing to this.

Because as soon as there's something to this, you're facing, you know, I think a tremendous downside. And I'll get back to that in a second.

Now we will agree that a lot of this case beyond what

I just described is again your -- her word against yours and your family.

But there are some things that confirm what she said that were done in real-time. And as a result, again, I would ask you consider like is this really going away? Like is the numbers really going to be, you know, low settlement, really something that's feasible?

One is -- and I -- you know, you can look through it. I have a copy again. It's been produced probably three or four times in different ways, the stuff about the safe deposit back, the money transfers. There's records from the time that talk about it.

The thing that I think, and I keep harping on this and people are free to tell me that I'm totally misinformed, but if this situation is as you described it in the affidavit, as it's described in the supposed letter to the district attorney's office, there's something that I just can't get my head around how it happened.

And I'm not ask -- you don't have to actually answer this question right now because that would be improper, but if we ever get the point to testimony, you'll be asked about it and I'm happy to share it with you.

But I've held it in my hand. You produced photos of them. You produced scans of them. There are a series of bills from New York City hospitals addressed to you and your family

members at Ms. Kapoor's home at her residential address.

What's more is that these documents say that the people who are being treated have no insurance. They're not supported by a charity or something. And so, it's basically out-of-pocket expenses being billed to the hospital.

Now for one thing, why would that be happening if there wasn't something underhanded going on?

Two, if it was true that you were being, you know, led slowly into your own financial demise, why -- like why would you be going to a hospital representing you had no medical insurance and then having the bills sent to her home?

Three, all of this speaks to taking advantage of whatever control was being exercised over Ms. Kapoor. And again, I'm saying that as if it's fact. I'm not asking you to believe me, but this -- you can expect to hear this stuff from me again if this case continues and that's all I wanted to point out to you.

Now where are we at? And again I'm not going to discuss specific numbers related to the settlement of this case, but consider this.

I've been working on cases like this for a couple years now. I've looked up what juries do with them. And I want to tell you a few things from our perspective that you're looking at in sort of the downside column.

The first and foremost is a single act of sexual

assault on a person, doesn't matter man, woman, child, whatever it is, can easily result in a jury verdict of a million dollars.

In addition, you can look up various award settlements that deal with people who are labor trafficked. And you know, those can go into the millions as well.

And I'm not saying that that's what's going to happen in our case. We may be very wrong. You may be very right. Again, not why we're here today, but the downside of all this is that it's several million dolllars, what we call as lawyers call the exposure. It's several million dollars that you're looking at in this case, right?

And you know, the Court mentioned this thing sustaining the verdict. And what that means for us is that let's say the jury awards Ms. Kapoor $3,000,000. I'll just give like a worst case scenario for you or something like that.

If they award $3,000,000, you know, you have the power to, one, make a motion to the trial court that it's an excessive verdict or from there, try and like get it thrown out or reduced on appeal, something like that.

The thing is if the jury credits any element of Ms. Kapoor's testimony on how she was treated from like the 2012 period on, it's going to be very hard to find a way unless the verdict is like way bananas excessive.

So what I'm basically saying to kind take that out of

a hybrid of legal and like trying to be colloquial speak is the universe of cases where people have recovered money for the types of things Ms. Kapoor was describing is very high.

And so, the idea that, you know, even if you lose at trial, $2,000,000 can become $50,000 is from our perspective not really a viable plan if that's what one wants to go with. And so, you know, so that is the kind of business calculus I wanted to share with you.

Now, again, I'll repeat this for, you know, the 18th time. I'm not here to decide who's telling the truth and who's not, but I just want you to know that from Ms. Kapoor's perspective, she's very hurt and very angry and very upset. And I'm sure that's not surprising to you whatever it is that happened between the two of you.

And so, what she shared with me and I told Ms. Sabharwal, I told the Court this, you know, when we talk about this, this is not about money in the sense of dollars and cents, this case.

For her, this case is more about feeling a sense of justice. And repeatedly what comes up is the idea of like not even a monetary penalty to you and your family, but some other thing like losing your citizenship or something, which we know is not going to happen in this Court. But you know, but that's sort of where she's coming from.

And one of the things we do in negotiation is we

share with the other people what, you know, other people say and you know, I encourage Ms. Sabharwal to be brutally honest with us.

But what I wanted to share with you is that she's coming from that place. So we're not offended by, you know, the $7,000 (indiscernible) I don't want to say that. We're not offended by the low offers, but what we're asking in turn is to, you know, to recognize that those low offers are not going to resolve it both the kind of factual level, the legal level, but also like an emotional and psychological level. And that is all I have to say. I hope I didn't go on too long.

THE COURT: Thank you, Mr. Lax. At this point, is there anything your client would like to add, Mr. Lax? No obligation. It's just an opportunity.

MR. LAX: No, thank you, Your Honor.

THE COURT: All right, thank you.

Ms. Sabharwal, is there anything you would like to say by way of opening remarks? And again, it need not be a direct rebuttal. It's entirely up to you.

Whatever you would like to do, in terms of giving the other side information you would like them to be thinking of -- about as we go through the negotiations, anything else you'd like share.

And you'll also have an opportunity of course to respond to various things Mr. Lax stated during the breakout

sessions. So whatever you'd like to say --

MS. SABHARWAL: Sure.

THE COURT: -- by way of opening remarks.

MS. SABHARWAL: Sure. I will respond, Your Honor. As the record reflects, I have been the only attorney on this case representing Defendants since the case was commenced back in 2021.

As Mr. Lax is probably aware, Ms. Kapoor has gone through several attorneys at this point. I believe Mr. Lax is the third attorney.

Ms. Kapoor has not only gone through several attorneys, but she's filed more than one amended complaint. The most recent amended complaint makes absolutely no reference to some of the things that Mr. Lax mentioned, which I would think if I was the plaintiff filing a complaint in Court, I would want to include in a complaint.

For example, Mr. Lax mentioned and also during our phone calls he mentioned that Ms. Kapoor was framed, that inappropriate pictures were taken -- nude pictures were taken of her by my client Mr. Butt.

There's absolutely no reference of that in the complaint. In fact, between the first and second complaints, there are various inconsistencies.

The first complaint mentions that Ms. Kapoor worked anywhere from 40 to 60 hours a week. The second complaint

mentions it was in the time frame of 60 to 80 hours. So there's a huge inconsistency between those complaints.

From the time I've been on this case, it appears that is Ms. Kapoor makes, I don't want to disrespect Ms. Kapoor here, but it seems like there's new allegations against my clients every month. And each month, the allegations get more and more serious.

So the question becomes why weren't these allegations raised before? Why is Ms. Kapoor waiting to assert these allegations with the change of every new attorney she gets?

Mr. Lax represents that my client Mr. Butt is a business owner. Well, Ms. Kapoor's also a business owner. And I've produced discovery showing that she owes -- she owns more than two businesses.

One of them is 24/7 Refined Gold, which is the subject of a state court action where Ms. Kapoor is alleging that she's owed some money in the amount of $520,000 from Mr. Butt. And this was the result of a business relationship that the two had.

Ms. Kapoor also owns Martha's Salon and I believe another business as well. Okay, and another business in addition to that.

So the question becomes why is Ms. Kapoor being represented on a nonprofit basis? Ms. Kapoor has --

THE COURT: Ms. Sabharwal with all respect, Mr. Lax's

determination to take a pro bono matter is irrelevant.

MS. SABHARWAL: Okay.

THE COURT: And the jury will never know that information.

MS. SABHARWAL: Okay, I understand, Your Honor. What I was merely trying to point out is Ms. Kapoor's credibility. Ms. Kapoor is a successful business owner with funds and assets and a significant amount of resources. She is not an individual, who was working as an unpaid domestic servant as she alleges in this complaint.

In fact, what she alleges in the state supreme court action is that she is a business owner with a significant amount of resources and assets and that my client took those assets from her. And therefore, she's owed something.

So the complaints are distinctly different from one another. They don't jive. It doesn't appear that the same Plaintiff is filing the same two complaints.

Mr. Lax mentioned that there was a case filed against Mohammad Butt. And there was a Detective Liu who had decided not to pursue a complaint on behalf of Ms. Kapoor, where she claimed there was an alleged incident of sexual assault.

I actually did speak to Ms. Liu when I got the complaint. And Ms. Liu essentially indicated to me that she found that Ms. Kapoor's allegations had no merit.

Although this was not documented, I did have a phone

call with this detective, who confirmed this.

And if Ms. Kapoor's claims did have merit, the question becomes why didn't the district attorney's office pursue those claims on her behalf?

I also produced prescription medications to Mr. Lax showing the number of medications Mr. Butt is on. I believe it's 12 medications.

The side effect of those medications is that Mr. Butt is unable to perform any sexual activity. That means he would not be physically able to sexually assault or rape Ms. Kapoor even if he had the intent to do so.

There was also a police report produced as part of Defendant's production. And in the police report, Ms. Kapoor, who is listed as the complainant, alleges that she called the police on Mr. Butt because he was and I quote, unable to have an erection.

And I've spoken to Mr. Lax about this questionable police report and why his client would file such a police report about someone being unable to have an erection or Mr. Butt being unable to have an erection.

About Ms. Kapoor's immigration status or her allegations that she was -- her passport was taken away or Mr. Butt used the seizure of her passport to keep her in this country or to keep her working for no funds or no money, that's absolutely false.

There was no coercion. Ms. Kapoor obtained her citizenship and her visa and all the other documentation through a marriage that she had, which Mr. Butt alleges was a fraudulent marriage that she had in order to get her immigration documents to stay in this country.

About the medical records, we do have some medical records. There's some other medical records from Dr. Abdul Verman (phonetic). And I've reached out to Mr. Lax to ask for HIPAA authorizations for those medical records.

Those medical records would tell the full story of Ms. Kapoor's mental health. Mr. Butt has indicated that Ms. Kapoor has severe mental health issues. And she's had prolonged history of mental health issues. And those mental health issues were not caused by Mr. Butt or his family. Rather Ms. Kapoor suffers from these mental health issues and these preceded her ever meeting Mr. Butt.

So we intend to ask for the full production of Ms. Kapoor's mental health records during the course of discovery.

There was a memo that Mr. Lax referred to regarding that was signed by Mohammad Butt and it was a memo to Ms. Kapoor about her first day of work.

Mr. Butt denies ever signing that memo. I've also produced documentation showing that Mr. Butt signed certain documents. And the signature on that document that was produced is not Mr. Butt's signature. Mr. Butt's position is

that the signature was fraudulent.

I will say that in order to have a successful claim of human trafficking, there not only needs to be entanglement, whether financial or otherwise, but there also needs to be force and coercion.

So entanglement alone is not enough. There was no force. There was no coercion. Ms. Kapoor maintained her own bank accounts. She maintained her own business. She was a equal business owner with Mr. Butt.

And again, their business relationship is the source of two other state lawsuits between the two individuals. I think that's all I want to say, Your Honor.

THE COURT: All right, thank you. So one point of clarification legally for both sides to think about is that you know, to maintain a successful trafficking action under the Trafficking Victim Protection Act, it is -- the Plaintiff would have the burden to show force, fraud, or coercion or a combination of such means designed to cause a person of reasonably similar background to, you know, feel that they're not basically free to leave or forced to engage in particular line of work.

So it's not as simple as forced or coercion. It's force, fraud, or coercion or a combination of such means. So that's just a legal clarification.

That being said, you know, as I noted at the outset,

the allegations in this case are very serious. Whatever happened between the parties is obviously subject to sharp dispute.

As Mr. Lax said during his opening remarks, the issue here is whether or not there is some path forward that can provide closure for the parties.

And it's not this forum, the settlement conference forum, is not to decide who is right and who is wrong. It is to find out if there is a path forward for closure.

A trial jury would be tasked with deciding who is right and who is wrong. And there are serious consequences to going to trial as discussed at the outset.

There is significant financial risk to going to trial. I'm sure Ms. Sabharwal has her own other case comparables. Mr. Lax provided some case comparables.

But you know, based on my own experience with these cases, millions of dollars is not outside the realm of possibility if the jurors were to credit Ms. Kapoor's allegations.

I'm not saying they will. I think both sides have a lot of cross-examination material to use against the other. But at the end of the day, what happened, who's lying, who to believe, who not to believe, all of that would be up to the jury.

And Ms. Kapoor's burden would be to prove by a

preponderance of the evidence, meaning more likely than not that something happened. It's not a criminal case where the proof is beyond a reasonable doubt. This is more likely than not.

And there's clearly some complicated history here. We don't have to unpack all of it today. I'm not even sure we would have time.

But I do think that both sides need to keep in mind the context of why we're here. And again, it's not point, counterpoint who's winning the trial. That's not the goal for today.

So with that being said, Ms. Sabharwal, is there anything -- do -- I'm sorry, Mr. Butt, I failed to give you the opportunity. If you want to say anything in this open forum, this is your opportunity, but you need not. It's totally up to you. We can also discuss whatever you'd like in the ex parte session.

MR. BUTT: A lot of facts which I thought we said before the Honorable Court, I would request the Honorable Court to please order criminal investigation from both sides, from me and from Ms. Kapoor.

That investigator to have each and every single piece of evidence and they will do. I would prefer that whosoever is wrong should be punished. My goal -- this my whole life, not only this event.

I have only one traffic violation in my whole life. Never done anything wrong. I've been in this country maybe 30 years, a little over 30 year. And I raise my children with respect and honor. All of my children has become professionals.

And contrary, Ms. Kapoor has a history of family which is a criminal history, not by me, but Ms. Kapoor's own testimony.

Her father was a criminal, which opened up a finance company in India and he ran away with the people's money, millions of people's money. And he got killed in Russia by the Russian Mafia on the distribution of the wealth.

Ms. Kapoor brother, he is a mentally sick person, Rahul (phonetic) Kapoor. And he has killed a person in India (indiscernible). And this was -- the news was broken into the national TV.

Same thing, Ms. Kapoor has the same mental health issue. And that this is -- this -- the whole family has robbed me.

This by saying Mr. Lax that Ms. Kapoor did not write -- wrote the checks, Ms. Kapoor has -- those are the checks, Ms. Kapoor has it. And then, he could not say that those checks were not in my possession.

That were -- the question was asking that state should be called. And Mr. Butt could not establish that she

accused me of doing something that which I did not do.

She said I, Mohammad, the complaint is that as -- that I Mohammad Butt transferred $520,000 from Ms. Kapoor's account into my wife's account unlawfully, unlawfully.

At the same time the attorney -- this is fraud upon the Court, the attorney (indiscernible) admission is that I did this unlawfully.

She could not establish that I -- my attorney asked her the question during the trial that Ms. Kapoor is there admissibility with you on that account? She said no that there is -- anybody signed on your account? No. Who transferred the money out? You know what she said with anger? Ask your wife. You know, you are sitting in the courtroom. You cannot be disrespectful to the Honorable Court. There are people.

THE COURT: It happens a lot. People are angry in Court.

MR. LAX: Ms. Kapoor does not have any (indiscernible) at her control. Okay, this I could show honorable judge, she burned my hand. I don't have very good condition.

When all this happened, Ms. Kapoor has burned my hand. I could check with the medical records, okay. She burned my head with the boiling tea on my hand. And this was the third repeat burn.

Ms. Kapoor has send me (indiscernible) I have the

papers if Honorable Court want to see it. I can show the document.

Ms. Kapoor did send me 17 calls a day, 16 calls a day asking for, sorry, the recording. Ms. Kapoor has produced and said, uncle, uncle, why if we have an intimate relationship, why do you say uncle during that conversation.

Ms. Kapoor was dancing on the floor when she convinced me that everybody is stealing, everybody is stealing from the store (indiscernible) inside these stores.

She pushed me because I was -- I have two stroke and Ms. Kapoor was in total control. And she was not only controlling, but Ms. Kapoor wanted me to marry her. I said cannot do that, I cannot. And this report was filed.

This -- there is -- other than this, Ms. Kapoor has filed five other lawsuits again me, which have been dishonored. She lost off my cases in the civil court of New York. And there are the proofs seen by the Honorable Court.

The -- Ms. Kapoor in her filing used to (indiscernible) everything. She used me in everywhere. She deceived the judge last time.

The judge (indiscernible), she deceived the judge last time she wrote the immigration status, she can marry her brother. It was a marriage of convenience.

Ms. Kapoor has a long history of criminal background. She married to the brother just to get the papers. She -- can

she deny this fact? She cannot. There are many more evidences that Ms. Kapoor is -- there is a file.

What is file? You know, Ms. Kapoor -- can she tell where this file? She cannot tell because she is a foreign payment. She is working for the foreign government at which she has evidence.

And she -- you know, what -- why I disconnected with her? She wanted to get more illegal activity. The last attempt she made, she tried to till my son.

On February 23rd, February 23rd in the morning, okay, my son was hit by a SUV. And he had a spinal injury four places. Nothing.

Judge these people of offenses. India, Asia, in this country, Ms. Kapoor is the facilitator of those payments. Can she deny the facts? She cannot deny the facts because there are facts.

This accident, this was not the Baltimore Bridge accident was not accident. There was 20 Indian crews were on that ship that were -- you report to the system. I'm sorry to say the system is -- I'm not saying it's -- system is not right.

I -- Ms. Kapoor has reported -- I reported to Court everything. Everything I reported over. You know, and those reports, the police reports are there.

I would request the Honorable Court, please, you

know, this -- whosoever order that I have requested for the criminal investigation, investigate me, too.

THE COURT: Mr. Butt, the Court is a different branch of government in the United States than the investigating authorities. And it is not my role to direct executive branch officials to conduct --

MR. LAX: Who should we --

THE COURT: Excuse me, sir, I'm speaking.

MR. LAX: Oh, I'm sorry.

THE COURT: It is not my role to conduct -- to direct the executive branch to conduct investigations. We have an adversarial system in this country. I mean, and I think that in India, they do as well, but are you -- you're from India or?

MR. BUTT: No, I'm from Pakistan.

THE COURT: Pakistan.

MR. BUTT: Yeah.

THE COURT: I'm less familiar with Pakistan's legal system than India's, because India's is based on Britain's and it's more similar to ours.

But in any event, I'm not directing executive branch to do anything. If people have information about criminal activity, they are free to report it to investigating agencies and the investigating agencies will determine whether or not to investigate.

I also note in that vein, that investigating agents'

conclusions or impressions regarding criminal investigations is not admissible evidence in any civil proceeding, because it is their opinion. It is irrelevant hearsay.

So to the extent that you spoke to Detective Liu with all respect, Ms. Sabharwal, Ms. Liu's opinions will never be in evidence.

With that, I think we should start the ex parte proceedings. So I would ask that the Defendants step into one of the witness rooms. And I'd like to speak briefly with Mr. Lax. And then, we will have an ex parte with you.

MS. SABHARWAL: Thank you, Your Honor.

THE COURT: And we're going to go off the record.

MR. LAX: Thank you, Your Honor.

(Recess taken at 3:19 p.m., recommencing at 4:43 p.m.)

THE COURT: So it's 4:45 and we have been engaged in ex parte conversations at this point for over an hour 20 minutes. So it'll be close to an hour and a half.

And that I want to thank the parties because these publications are very difficult and I definitely gave both of you things to think about. I'm a little argumentative with both sides. That's part of my role.

Part of my role is to help the parties understand the risks of proceeding in the case. And I really do believe as I shared with both sides ex parte that this is a case that should try to settle.

My hope was that we can find a way for all the cases to settle. So I spoke briefly with counsel also off the record. And my understanding is that both sides are interested in looking into that option. And in order to do so, need some time to speak with the state court lawyers.

So, Mr. Lax, what we had discussed briefly was perhaps scheduling a call in a few weeks after you have an opportunity to discuss things more with Ms. Kapoor and also with state court counsel. Does that make sense to you? Is that workable for you and is --

MR. LAX: Yes.

THE COURT: -- Ms. Kapoor in agreement that that's how we should proceed?

MR. LAX: I think so, yes, yeah.

THE COURT: All right. And how about you, Ms. Sabharwal, same question, are you and Mr. Butt in agreement that that's how we should try to proceed?

MS. SABHARWAL: Yes, Your Honor.

THE COURT: All right, so three weeks from today happens to be the 4th of July. So the Court obviously is closed on a federal holiday.

What -- we do have availability during the afternoon on Monday the 8th. Do you have any time at -- in the afternoon on maybe 3:30, Mr. Lax?

MR. LAX: Yes, Your Honor.

THE COURT: What about you, Ms. Sabharwal? This we could do on the phone, I think. We're determining next steps.

MS. SABHARWAL: That's fine with me, Your Honor.

THE COURT: Okay, so Monday, July 8th at 3:30 we'll have a telephone conference. And what I would ask the parties to do, both sides, is to think about all the things that we talked about today, speak with the state court attorneys, and start just to really think through on the Plaintiff's side how -- what sort of a framework or resolution could help bring closure of all of the cases between yourself and the Butt family.

And same thing to you, Mr. Butt, you know, is there a path forward that can bring closure for your whole family for all of the cases that are pending and can we then help structure them in an agreement that might be able to be reached? That's my homework for both sides.

And I want to thank everybody for being here. I'm going to thank you, Mr. Butt, for sharing your views and your experiences.

And same with you, Ms. Kapoor. You know, I want to thank you for your candor during the ex parte conversation. I know that this is not easy. That's part of why I talked at the beginning about how there's process and there's emotions involved and I get that. It's not easy.

And I appreciate that both of you will

work -- willing to do the work to see if we can get it done, all right?

Is there anything else we should do today, Mr. Lax?

MR. LAX: I don't believe so. And we thank the Court for its time.

THE COURT: Thank you.

Ms. Sabharwal, anything else we should do today?

MS. SABHARWAL: Nothing on our end. And I thank the Court for your time as well.

THE COURT: All right. So we will reconvene on the 8th, attorneys on the phone. And you'll let me know where you are.

And if we need to have another round of this, we certainly can, but I really do hope that we can help you find some -- I think I said it to Ms. Kapoor, I'll say to you now, I want to help the parties find peace, so you can move forward.

MR. BUTT: Thank you very much. You know, I ask if you allow me to ask one question only? If you allow us, me and Ms. Kapoor, we both can talk, we --

THE COURT: That your lawyers will have to give you advice on that.

MR. BUTT: Okay, then, we talk or no?

THE COURT: You guys, you're going to need to talk to your lawyer about it. And Mr. Lax will talk to your lawyer about it. There are risks with talking to represented parties,

and at this juncture, I can't authorize it. It's not up to me. It's up to your attorney, all right?

MR. BUTT: Because we can sit in the conference room and then we talk and maybe we could come up with a solution.

THE COURT: I leave that to your attorneys to advise you on what they think is best. Okay, but it's not my -- I can't make that decision for you. That's for your attorneys to decide.

MR. LAX: All right, thank you.

THE COURT: Thank you all.

MS. SABHARWAL: Thank you. Have a good afternoon, the rest of it.

(Proceedings concluded at 4:47 p.m.)

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Chris Hwang*
___________________ June 22, 2024

Chris Hwang Date

Court Reporter