UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

SHAMOLI KAPOOR, Plaintiff, v. MICHAEL MATTHEWS JEWELERS OF KINGS PLAZA, LLC ET AL, Defendants.

Docket No. 1:22-CV-05027-HG-TAM

Brooklyn, New York
Wednesday, July 31, 2024
11:00 a.m.

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff: Law Office of Joshua J. Lax
JOSHUA J. LAX, ESQ.
CHARLES HICKERSON, ESQ.
JAKE BURNS, ESQ.
225 Broadway
Suite 715
New York, New York 10007
212-566-6213

For the Defendants: Law Office of Bhavleen Sabharwal, P.C.
BHAVLEEN SABHARWAL, ESQ.
27 Centre View Drive
Oyster Bay, New York 11771
917-597-5984

Transcription Service: Superior Reporting Services LLC
P.O. Box 5032
Maryville, TN 37802
865-344-3150

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

P R O C E E D I N G S

THE CLERK: This is civil cause for a status conference for docket 22-cv-5027, Kapoor versus Michael Matthews Jewelers of Kings Plaza, LLC, et al.

Before asking the parties to state their appearance, I would like to note the following. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court.

Will the parties please state their appearances for the record starting with the Plaintiff?

MR. LAX: Good morning, Your Honor. On behalf of Shamoli Kapoor I am Joshua J. Lax. I am joined, although they won't be speaking, by my colleagues Charles Hickerson (ph.) and Jake Burns (ph.), who I believe you met at the settlement conference.

THE COURT: Good morning.

MS. SABHARWAL: Good morning, Your Honor. Bhavleen Sabharwal representing Mohammad Butt, Laraib Butt, Naila Butt, and Zuha Butt.

THE COURT: All right. So good morning to you

both. As you know, we're here today because the parties have raised a number of discovery disputes in a joint filing. We also received an additional letter yesterday. So I wanted to sort of try to address as much as could in terms of these discovery issues and get a sense of whether or not we can find a way to resolve some of them. It strikes me that many of them relate to, you know, questions as to whether or not appropriate investigative steps were taken to determine whether or not the documents exist and that some of this could potentially be resolved by some sort of an affirmation or certification of the steps taken to investigate what discovery exists and to explain the lack of ability to locate the records.

So, Mr. Lax, I'm curious to hear your thoughts, you know, kind of big picture. And then I think it'd probably make sense to go through the items fairly granularly. But to what extent am I in a position to direct them to produce documents they are saying they don't have, and in the absence of -- and the evidence if they do have them, what should we do in terms of certification of affirmation? What are your thoughts on how to close the gap there based on your beliefs that they didn't really do a full search?

So starting with you, Mr. Lax?

MR. LAX: Yeah. So just if I could give it a little more context, Your Honor, which might help fashion,

like, what's the appropriate remedy here. So, you know, my understanding prior to my involvement in the case was that the Defendants were taking the position that they didn't employ Ms. Kapoor. They had no relationship with Kapoor as alleged in the lawsuit whatsoever. And that the thing that they basically -- the things that were being sought, they had no evidence, you know, that -- or they had no discoverable materials or responsive materials.

On top of that, it's -- I was unable to find any Rule 26 disclosures of what they would actually offer to prove their defenses or to rely on in any sort of trial or motion practice. And that struck me as a little odd given, like, the duration of their relationship. But again, my understanding -- I may have been misinformed or misread whatever it was I was looking at -- was that they were basically denying everything, like, wholesale.

In early June or late May, that position changed. And I want to be clear that I don't necessarily think, you know -- I don't lay this on Ms. Sabharwal's feet at all. But at some point in late May or early June, they produced -- she produced to me something given to her by, what I understand to be, Mohammad Butt, which is this letter. And the letter was addressed to, I believe, the District Attorney's Office. And it laid out, like, a completely different account of what transpired between the Butt family and Ms. Kapoor.

And so the issue is that, like, in this letter -- and I apologize. I realize I didn't actually attach it. And I can go through pieces of the letter where Mr. Butt says that there is evidence that he has to support these things. His letter lays out fairly serious allegations against Ms. Kapoor. And, you know, discusses other -- you know, we've talked about and I've talked about, in various context with the Court and with Ms. Sabharwal, one set of transactions.

He's describing other transactions where she's gaining property from him. He's selling his merchandise and all this stuff. And it tries to cast Ms. Kapoor as basically having manipulated Mr. Butt and blackmailed him to be able to, like, gain all his shares and all his holdings. Like, to be able to sell out from under him his business holdings and his -- like, the assets related to those businesses and things like that. And he even goes to say -- and I think I said this in the letter -- that there is computerized records, or it was implied that he is suggesting that there is computerized records and, like, video recordings of some of the stuff happening. Or that there -- they can be located in some way.

And so my concern is that, one, you know, like -- well, I'm trying to do one of two things. One is I am trying to see what the proof of any of this is. If this

is going to be his account at a deposition. If this is going to be his account at trial. Or two, establish in some firm way that despite his lengthy, you know, account and the claims he makes therein, he actually has no proof of it at all. So as it relates to what I call in the letter, you know, loosely the documents and materials that go to the relationship between Mr. Butt and Ms. Kapoor, then that is, you know -- we can follow one of two ways. And I don't know what the Defendant's ultimate position is.

The other issue that I think permeates both the financial records and this issue is that everything seems to be going through the filter of Mr. Butt and not at all, you know -- I feel like there's an avoidance of discovery that relates to Naila Butt and the daughters. And so that is another basis for this issue, which is that according to Ms. Kapoor, the wife was much more involved in the trafficking activities and the benefits of the trafficking activities than, you know -- obviously, the Defendants dispute that, but --

You know, but the discovery responses seem to be all through the filter of Mr. Butt. And so, you know, from that perspective, you know, we -- you know, there is a concern that she is not also really being consulted and not really participating much. And I can understand that logistically that may be needed. However, you know,

that -- we need to be assured that, like, you know, there's not -- she's not sitting on responsive material that either supports or undercuts what her husband's saying. I also don't know if she agrees with this account of everything. But that's perhaps a conversation for a different day.

THE COURT: Okay. And that is helpful context. You know, I think that the challenge always for the Court in discovery disputes is, you know, we obviously are not positioned to know with any certainty who has what and what discovery steps they've taken, whether they're being fully transparent with their counsel. And it's a very difficult thing to help resolve discovery disputes because there's just a lot of facts. And instead of the facts being proven with evidence, there's a lot of allegations that get, you know, thrown around by both sides. And this isn't unique to this case of course. This happens all the time.

The way this sort of translates to my role is it's very difficult to ascertain who's right and who's wrong. And, you know, if we were to have to have a hearing on the sufficiency of the search, and responses, and all of those things, I mean, that could be one option.

Another option could be to, you know, have a deposition of Mr. Butt where you're cross-examining him on the basis of that letter, and if he retracts the letter and has no backup for it, so be it. But if he tries to later

produce evidence that was called for as part of your discovery, and it was not produced, it would all be precluded.

And that's the thing I think we need to have a lot of clarity on here, Ms. Sabharwal, in terms of how to proceed. Because, you know, faced with this, all of these allegations, that there is information out there including what I think is a good faith proffer by Mr. Lax as to why he believes Mr. Butt is sort of maybe sitting on evidence that he was been promising to the District Attorney's Office.

What am I supposed to do in the face of these competing versions of events? And how am to ascertain who's right and who's wrong? Ms. Sabharwal?

MS. SABHARWAL: Well, regarding Mr. Butt's letter to the DA's office, Mr. Lax is correct. He is claiming blackmail and that Ms. Kapoor was taking money from his accounts and using him and whatnot. Those are his claims.

Mr. Butt does not have the burden to prove that Ms. Kapoor did anything to him. As far as I know, there's been no counter claim filed by Mr. Butt against Ms. Kapoor.

Ms. Kapoor has the burden in this case to prove her claim. So to the extent she claims that Mr. Butt was, you know, labor and trafficking her and blackmailing her and -- you know, the other hundred things she claims, she's responsible for proving her claims. And she's responsible

for a production of those documents.

THE COURT: But your client has a discovery obligation as well.

MS. SABHARWAL: Right.

THE COURT: Please address my asked question.

MS. SABHARWAL: I do not have any records. If Mr. Lax served me with a response, or a demand rather, for the records he is seeking, specifically pertaining to the DA's office letter, I will respond to that demand. I do not have a demand. When I did produce the letter, I did ask my client if had any records supporting those claims, and he responded he did not. But I can certainly go back to him if I'm served with a demand.

THE COURT: Right. But what's happening here, Ms. Sabharwal, is you're becoming a witness. And that's a problem. Because it will preclude you from being able to participate in the case down the line. That's why what we need to figure out here is a way to ascertain whether or not this evidence exists, where it exists, and it has to be certified by your client.

So if Mr. Lax is requesting all documents and evidence regarding the relationship between the parties and there's just nothing coming his way, at some point your defendant is going to be stuck with that answer.

And I recognize that Ms. Kapoor has the affirmative

burden of proof as to her claim. But when Mr. Lax has a good-faith basis to make discovery demands, saying, well, it's her burden to prove the case, is not an answer.

And I'll just give you an example. Interrogatory number 3, "Identify all businesses in which each defendant has held a management, directorial, officer, or supervisor role or position, or held the authority to hire and fire employees from January 1st, 2009, to the present." That is not a request for documents. That is an interrogatory. And the response is totally nonresponsive. The response is, "Defendant Mohammad Butt maintains that Plaintiff stole documentation belonging to Defendant Mohammad Butt." That is a response that one might make in response to a document request. It is not a response to an interrogatory.

Are you representing that Mr. Butt doesn't know which businesses in which he held a management, directorial, officer, or supervisor role or position, or held the authority to hire or fire employees? Because that's what that interrogatory is calling for. It's calling for the Defendant's knowledge, not their documents.

So this type of strategy isn't going to work with me, Ms. Sabharwal. And I don't appreciate it. So please tell me how is that responsive.

MS. SABHARWAL: I did respond to interrogatory number 3, and I did list, I believe, it was two businesses,

and I'm in the process of pulling that up. But there was a response to that interrogatory.

THE COURT: I'm reading your portion of the letter. And the portion of the letter has two names listed, but it doesn't provide any details. It doesn't provide any of the information that's being sought as part of the interrogatory.

MS. SABHARWAL: I apologize. My computer is frozen. I'm just pulling that up. It is not responded until I -- I will respond to that interrogatory. I think that's a fair request.

THE COURT: So what's strange to me is that this is included in your portion as if this is emblematic of you actually meeting your discovery obligations. To me, it evidences the exact opposite.

So if this is the approach that the Defendants are taking in this case, it's not going to work. It's not going to work, and it's going to unduly prolong things, and it's going to end up with your defendants in the witness box in my courtroom for an evidentiary hearing on whether or not discovery has been sought and provided. And I don't think that's the position that anybody wants to end up in.

MS. SABHARWAL: I certainly don't want to end up in that position, Your Honor. I am happy to provide a clarification underlying the search for discovery and documents and any other relevant discoverable material from

my clients.

THE COURT: I certainly think that that's an important first step. And that will help hopefully to understand what does and doesn't exist. It doesn't necessarily answer the question, though, of what to do about a lot of this financial information.

So, Mr. Lax, in terms of the, you know, sort of document request that revealed the nature of the relationship between the Plaintiff and the Defendant, like, you asked for communications, documents reflecting addresses, telephone records, all of those items. You know, I don't want to -- I think that they relate perhaps to document requests 9, 10, 11, 12, 13. A bunch of document requests all, you know, sprinkled throughout your document requests relating to their relationship. Do you think a certification is going to answer your questions, Mr. Lax?

MR. LAX: Yeah. Yes, Your Honor. I mean, as I said, you know, I just -- like, I just wanted to -- my hope was to get firmness one way or another on what the Defense's position is going to be in summary -- you know, in summary judgment, in trial to the extent, you know, that it's borne out by discovery we're entitled to, so that, you know, we could complete discovery in an effective way including, you know, ask the right questions at depositions and whatnot. So if the response is in fact, like, we have nothing that -- you

know, we're going to tell this counsel we have nothing that in any way intersects with it or supports it, or we have nothing about Shamoli Kapoor to present to you at all. Like, if that's their response, like, fine. I mean, I assume that Mr. Butt will abide by this letter, and you know, that will be, you know, on them to explain the lack of evidence that's referred to in there, so --

THE COURT: Okay. So hopefully you guys can continue to discuss all of these issues relating to the documents relating to communications and the nature of the relationship. But as we have discussed in prior conferences, aspects of the relationship between the parties have a financial dimension, and there has been discussion about various financial documents and records that Plaintiff has been seeking.

And I think I sort of previewed at a prior conference that I'm obviously very familiar in several -- with the case law that, you know, financial discovery regarding net worth, purely for the purpose of determining sort of net worth, is irrelevant at this stage of discovery in most cases because it pertains to the ability to pay a judgement, and that's not where we're at.

But here, I see the financials as somewhat different. And I've described this previously at another conference. Part of the nature of the allegations on both

sides, from what I understand, is these issues of financial entanglement.

You know, your client, Ms. Sabharwal, is claiming that she was trying to take away his assets and blackmailing him and, you know, who knows what else in terms of financial entanglement. And Ms. Sabharwal has, of course, made arguments regarding financial entanglements and financial fraud. There's aspects of fraud with regards to some of those checks, and the backdating, and all of those things.

So I just don't see how this argument that financials aren't relevant because of case law that talks about net worth with regard to collecting a judgement applies here.

And so, Ms. Sabharwal, I just -- this is not that kind of case. So, you know, what do you expect to do with regard to these documents regarding finances?

And I'll start with you, Mr. Lax, in terms of what you're really seeking.

MR. LAX: Yeah. It kind of goes back again to the relationship, but, like, in different way obviously. So part of Ms. Kapoor's allegations and her account of her relationship with the Butts is that, you know, there was this period in 2011 to 2013, '14, where they were taking property and money from her in various aspects. Like, in various ways. So one was that they were -- like, Butt himself was

inducing her into these various business deals. And, you know, again, some of it is the subject of the state court action. Some of it is separate from it.

Second is that there is, like, an issue with her safety deposit box and taking actual jewelry out of the safety deposit box and converting it to cash -- converting it to money and using it to purchase -- then this what the document request related to the purchase of the son's house is related too. But that money was used to fund the purchase of home that I think ultimately was given to the son of the Butts who is not a Defendant here; but nonetheless, the Defendants facilitated this.

We're looking to as, you know -- part of it is that I'm trying to establish, like, the flow of Ms. Kapoor's money into the Defendants' hands, and how it was moved around amongst them and moved out. I mean, that is the major thrust of what we're trying to accomplish by this discovery. You know, I do think that they, you know -- there is a degree to which their current financial state might be relevant to their ability to pay punitive damages. But putting that aside, the financial records are really about what type of money they were getting from these transactions and how they were moving it around and things like that.

I will say, you know, we are in the process with Ms. -- you know, Ms. Sabharwal has asked me to -- you know,

she's given us the, like, subsequent demands that relate to this. I produce some of the records that we've already been able to locate. We're getting ready to produce more. But what we're looking for is the other side of things, which is what did the Defendants do with money obtained from Ms. Kapoor.

And, you know, it's sort of all in a black box in a way on the Defendants' side. You know, it doesn't seem to be a dispute at this point based on what's in the letter that they engaged in some number of business transactions. Again, if the Defense is that she was taking from them, then, like, shouldn't they come forward with that information or that proof? And then likewise, the claims are that part of their control over her was gained through their own financial control, and so taking her liquid assets, converting her hard assets into money, into cash, is part of what they were doing to take control.

And, you know, the weird thing with the timeline is that, you know, from our perspective, right, a lot of the big events happened in terms of the transactions, and like, that period between 2009 to 2014. After 2014, so say 2017, 2018, you know, they're getting the benefit of Ms. Kapoor's work for them in the house. So to some degree, what their housing, their home expenditures are, you know, is proof of their motive to traffic and indenture a human being.

Also with the timeline, I would also note that my reading of Mr. Butt's -- we'll call it the DA letter for lack of a better word -- seems to suggest that in this later period, that is 2014 to 2018, there is -- you know, he's basically being fleeced by Ms. Kapoor and a number of unnamed cohorts. So although it's a long time period, it seems that, like, there's relevant events alleged by both sides taking place in that span of time.

THE COURT: All right. Ms. Sabharwal?

MS. SABHARWAL: The difficulty I have with this case is that it seems like the allegations changed every month or every week or so. The complaint alleges that Ms. Kapoor was not paid wages. That she performed work for the Butts or Mohammad Butt, who owned these jewelry stores. She was not compensated for that, and then she was also doing some work in the home. She was also not compensated for that.

And now it seems like the allegations have morphed into more of a human trafficking, you know, claim where there was intermingling of financial assets. And then, you know, at the last conference, Ms. Kapoor, or Mr. Lax on behalf of Ms. Kapoor, for the first time claimed that she was being blackmailed. So I don't see anything in the record proving that Ms. Kapoor ever claimed before the last conference or very recently that there were any human trafficking claims.

With regards to the financial entanglement, I did produce some financial documents to Mr. Lax, and that's the extent of what my client has provided me with. And that's to the extent of, you know, what he has.

If Ms. Kapoor has these claims that money was being taken out of her account or money was being taken from her to buy homes and other purchases, those documents should be readily available to her. There is a far less intrusive way to get this information that does not require my clients to produce their bank statements going back 10 years.

THE COURT: So, Ms. Sabharwal, I have to say, I really have no understanding of your statement that you did not -- the claims are morphing and that you were not aware of human trafficking allegations. I mean, it's in the complaint that this is a human trafficking case. And before Mr. Lax was even on this case, we had a conference where Ms. Kapoor laid out her factual allegations to me in great detail. You were on that call. So none of this is news to me. And I've been on the case less time than you.

So I really don't understand that statement, and like, this sort of playacting does not work with me at all. So please just cut it out. Okay. I'm sorry, Ms. Sabharwal. It's unacceptable. The record is clear about what the allegations are in this case. It's been clear for months to me. And it was made very clear to me at the conference,

before Mr. Lax was even here, that there were issues of financial entanglement and methods of control were used. And so please just -- the theatrics don't work. I'm not interested. Your clients might be interested. I'm not. It's not going to work with me. It's not going to work with the jury. Please communicate that to your clients, okay?

MS. SABHARWAL: Well, Your Honor, the letter that was submitted by Mr. Lax indicates that there was some kind of bartering agreement where Mr. Butt employed Ms. Kapoor and in exchange for that employment, she -- he sponsored her family, and he also gave her a green card. So, I mean, it's distinct from her initial allegations, which were that she was not compensated at all. There was no reference to Mr. Butt providing her something in exchange for her services.

THE COURT: Mr. Lax, do you have a comment on that?

MR. LAX: Saying that he promised to do that and didn't. And so the promise was sort of the beginning of this process of taking control over whatever it was she had that he wanted over time. So he never actually went through with that. And I would also say on that score, Ms. Sabharwal and I have been talking about immigration records. And I offered to give her, like, a release if she wanted it to get the immigration documents from Homeland Security. So, you know, it's not like we're hiding anything here.

THE COURT: Okay. So in terms of the financial,

you know, the financial entanglement issues and the questions of the money flow in terms of whether or not monies are being taken from Ms. Kapoor, whether or not the Defendants are financially benefiting from their utilization of her labor, and/or direct theft of her assets and goods in the form of jewelry and things, clearly is directly relevant to this case. And so I just don't understand the arguments that it's beyond the scope in terms of what would be appropriate in a case like this.

That doesn't necessarily extend however in my view all the way through to tax record. You know, identification of financial accounts and assets, financial records and banking documents, funds used to purchase the home, all of that makes sense to me, Mr. Lax. Income tax returns and IRS releases are slightly different in terms of the applicable law in terms of what the requesting party needs to show. Obviously, the requesting parties need to show relevance. It's just a prerequisite under Rule 26. And there would need to be a compelling need under the cases suggesting that the compelling need must be shown because the information may not be readily obtainable from a less intrusive source.

So the question then becomes, you know, what would the tax records show that the bank records and financial records wouldn't show. Mr. Lax?

MR. LAX: Yeah. Actually, You Honor, I agree with

that sentiment. And in fact, the only thing that the Defendants were willing to provide were their income tax records, but then, you know, represented that they hadn't paid income tax or filed income tax returns for years. So I think with that, with this type of case, like, the -- between the parties, like, it has actually -- the point you're making has just been borne out. But it actually tells us almost nothing. I accept the Court's view of this portion of our request.

THE COURT: And, you know, what is your response, if at all, to Ms. Sabharwal's comment that the Plaintiff would be in the position to prove these financial -- you know, and that would be the less intrusive means than seeking the financial records from the Defendants?

MR. LAX: Perhaps that might be true, but the -- there's two problems with that assertion. The first one is what they ultimately did with the money actually is, you know, probative of the fact of what their intentions were. So if they took money under the guise of a business deal, but it was diverted into personal accounts and things like that, might tend to show that it was the proceeds of trafficking as opposed to a business arrangement.

Likewise, money flowing from them, you know, depending on where it's coming from, you know, would be, you know, to Ms. Kapoor would be probative of what they raise as

sort of the narrative and defense.

Second is that this is not -- you know, I disagree with the statement that is unduly burdensome or that this is somehow -- you know, it's relevant. It's relevant to a party's claim. It's also relevant to a party's defense. It satisfies all the prerequisites under Rule 26 and Rule 34. And the showing of burdensome hasn't really occurred. You know, I don't know what their banking situation was, so I don't really -- I'm not in a position to know, you know, like, how hard or easy it is for them to get records.

And like I said, you know, we are in the process of, you know, under Rule 26, gathering, you know, old records so far as we could. And there are also outstanding requests that I've been working with the client on. So we are fulfilling that part of it, but it doesn't, I think, excuse the Defendants from the further proof of the financial entanglement and the benefits that they received. Also Ms. Kapoor would have no -- you know, she doesn't have their -- you know, like, one of the things she said was, like, you know, she was repeatedly giving, like, therapeutic massages every day to Naila Butt. The benefits that they may have obtained from that, she's not going to have necessarily records on that, so --

THE COURT: Well, I don't think anybody will have records on that.

MR. LAX: Yeah. Unless there was a prior -- you know, they were paying somebody under some sort of out-of-pocket medical expense that she was replacing, you know.

THE COURT: Yeah.

MR. LAX: I don't know.

THE COURT: I don't know.

MR. LAX: Yeah.

THE COURT: All right. Ms. Sabharwal, what is your response?

MS. SABHARWAL: I mean, I think the requests for the records is -- I maintain Defendants' position, which is that the request for records is unnecessary. It doesn't pertain to this case, and also the time range is very broad. It goes back over ten years. I don't know if the bank would even have bank statements from my clients going back to that time.

THE COURT: The only way to find out is to check. So, you know, I have to respectfully disagree with you that it's not relevant. Whether or not the bank has the statements or your client has the statements tucked away in a file cabinet somewhere, I have no idea. But, you know, the time range is the time range. This is the time range of the allegation, and the financials are very, very relevant to the case in light of the allegations regarding nonpayment,

financial entanglement, and an effort to exploit and/or control Ms. Kapoor.

These are the allegations, and your clients -- you know, as I recognize, feel that these allegations are unfounded. And as I think I said at the settlement conference, you know, I think it's a very, very challenging case. Nobody likes to be accused of terrible things. But at the same time, the case isn't going away. Cases don't go away in federal court. So your clients need to deal with it, Mr. Sabharwal. And it's not just Mr. Butt. He's not the only defendant. And I think that the daughters and the mom and everybody need to understand that they could be at risk too. And they need to be engaged in this.

If discovery closes, and they have documents and records that are available and appropriate, they will not be coming into evidence if they were not produced during discovery.

And, you know, sort of I just have this sense from the dynamics between the parties that there is very, very volatile and sort of difficult relationships between them. And rather than engaging with the allegations and engaging with the process, both sides, you know, to some degree, your client more recently with this new lawsuit, are choosing to sort of just throw accusations at each other. Accusations will only get you so far.

And in terms of federal court, she can go to trial on her testimony alone if that's what ends up happening. It's not going to go away. And so the issue that your clients need to confront is actually getting through this process in such a fashion that everybody's interests are being protected in the process, and that all of the defendants from whom discovery is being demanded are participating in the process so that if there are relevant documents and evidence, it is produced. If it is not produced, it will not be admissible. And they need to understand this. I mean, is it Naila -- who's the lawyer? She of all people --

MS. SABHARWAL: Laraib.

THE COURT: Naila, she won't understand all of this. And you know, Mr. Butt, based on my observations at the settlement conference, is angry, not being objective, and he needs to make sure that the steps he's taking in this litigation are not going to negatively or unfairly impact what the other defendants' defenses may be.

That all make sense to you, Ms. Sabharwal?

MS. SABHARWAL: Yes, Your Honor. But as far as the request for the financial documents, there's been no claims that Laraib or the other daughter, Zuha, were involved in that financial entanglement. So I think requests that --

THE COURT: I understand that. I understand that.

I'm speaking more broadly about the need to make sure that all of the defendants are engaged in this discovery process. Because Mr. Lax will seek to depose all of them. And if during deposition, they're, like, oh, yeah. You know, there was this document. You know, that's very little, very late.

MS. SABHARWAL: Mr. Lax mentioned that everything was being filtered by Mohammad Butt. That's not the case, Your Honor. I did provide prior counsel with over 150 pages of Rule 26 disclosures and also supplemental Rule 26 disclosures that just pertained to Laraib Butt and Zuha Butt, and I'm happy to provide that to Mr. Lax as well.

THE COURT: Mr. Lax, do you have those documents?

MR. LAX: Yeah. I mean, I believe that they're -- the bulk of it is just that they were enrolled in schools during the operative time period. And it's separate from sort of the issues here. You know, what I would say is that, you know, there were -- there are specific things that Ms. Kapoor says about the daughters. But, you know, I was voicing my concern more broadly that, you know, the -- just the responses almost seem to focus fully on Mr. Butt's -- the materials Mr. Butt has. So just from that sort of general precept, that was the issue I'm raising.

THE COURT: Understood. So in terms of next steps, and I in no way meant to comingle the issues insofar as you understood me to be speaking about the daughters. These

would be the financials. To the extent that those particular individuals don't have financials, are not being requested financials. I certainly am not suggesting they would have them particularly given their ages at the time.

That being said, you know, this is currently, you know, before me as a discovery dispute, and, you know, I'd like to try to work through these issues as expeditiously as possible.

And if this, you know, were to come to a full motion to compel or a hearing, you know, I have tell you, Ms. Sabharwal, based upon the allegations in the complaint, it is very clear to me that the financial records are relevant. The, you know, exact nitty gritty is something that you guys are going to have to figure out in terms of what exists. And, you know, to the extent that parties can resolve those issues on their own, they certainly should.

I certainly don't relish the thought of having an evidentiary hearing in this case on the question of discovery. But as I said at the outset, these discovery disputes are very difficult because we don't have any concrete proof of who is correct and incorrect in terms of what documents exist, don't exist, what discovery steps we're taking, et cetera, based on attorney proffer. And so if, you know, we need to get the relevant witnesses in, we will. I just really don't think that's a good use of anybody's time.

And I certainly don't think you necessarily want to have your client have to testify necessarily, Ms. Sabharwal. So I'd really like to avoid that outcome. So please, you know, discuss the outstanding documents regarding the nature of the relationship, and you know, if there is a certification of search and there is just no documents that can be found, and that's the Defendants position, then they're going to live with that lack of evidence.

I can't necessarily make the evidence exist, Mr. Lax, as we know.

MR. LAX: Yeah.

THE COURT: With regard to the financials however, you know, the banks very likely have documents, even if the Defendants didn't retain them. And, you know, if it comes to it, we could do third-party discovery if that's necessary. But it's certainly best if the Defendants gather the documents that are within their control, and that is their obligation under Rule 26.

So, Ms. Sabharwal, you know, I direct that you really dig deeper into this financial documents issue. I don't find the tax returns and documents to be clearly relevant based upon the information I have so far. So I think that impacts document request 32 and document request 45. If for some reason, Mr. Lax, through the development of additional discovery if it becomes clearer that the tax

returns are relevant for some reason, that obviously can be revisited. But at this juncture, I don't see it.

So what else should we do today? Mr. Lax?

MR. LAX: I would just seek -- the Plaintiff was seeking, you know, the Court's assistance to try to break through some of these impasse. So, you know, I think the Court's suggestion if they are going to, you know, affirm in some capacity that they have nothing else, and if they don't, they'll produce it. Then that moves us closer to the point of actually being able to conclude depositions.

The only thing Plaintiff, I guess, would request is, you know, some sort of interim deadline for the Defendants to kind of follow through with whatever subsequent searches or look at the requests they need to do.

THE COURT: I also note that we don't really have a sort of robust discovery schedule in this case. I generally like to have a fairly complete schedule. We had put the case down for the settlement conference and never really set a full discovery schedule. So I do think it's a good idea to set some dates. It's currently the end of July. I don't know exactly how much fact discovery, you know, will take in terms of weeks or months given the number of depositions the parties anticipate and what not. But I certainly think we should set some dates.

So from here, working kind of at the out -- sort of

with a fact discovery deadline, we can then set interim deadlines if we need to.

What do you think is realistic, Mr. Lax, in terms of the fact discovery period?

MR. LAX: Your Honor, we filed -- the party jointly submitted a schedule on Friday, July 26th --

THE COURT: This is CF91?

MR. LAX: I believe so.

THE COURT: Right. That letter reflected November 27th as the suggestion for fact discovery. I wasn't sure if anything else would impact that or if we should just go with your proposed dates.

MR. LAX: I did see where -- from my perspective, we were trying to build in time to resolve the issues that we've discussed today.

THE COURT: Okay. So this accommodates that?

MR. LAX: I believe so. I don't know. I would like to get Ms. Sabharwal's point of view though. You know, I don't know if we specifically discussed that.

THE COURT: Okay. So, Ms. Sabharwal, you know, my only concern about the discovery dates is, you know, if there is a need to go to the banks and everything else. I just anticipate that it's going to take some time, and I don't know if people are going to be ready to do depositions prior to some of the dust settling on this document discovery. So

what are your thoughts on a realistic deadline for the completion of fact discovery? Ms. Sabharwal, do you think that this November 27th deadline would provide enough time to resolve the issues we discussed today and also next steps?

MS. SABHARWAL: I think if we can push out that deadline by a month to December 27th, that will give, you know, my clients to go to the bank, get whatever statements they need. I also have outstanding discovery demands that Mr. Lax is in the process of responding to.

THE COURT: Okay. So I'm fine with that. I note that December 27th happens to be, like, two days after Christmas holiday. I don't know if that impacts anybody. I don't know if anybody has school-age children that are home. We could put it for the 27th. We could put it for the 30th. We could even put it for the first Monday in January. I just think we need dates.

So, Mr. Lax, what are your thoughts?

MR. LAX: Yeah. I am a parent of small children. So I'm always reluctant to come into too much that week. So if the Court's willing to give us to, like, that first Monday in January, that would preferable for me.

THE COURT: Oh, so the first Monday in January following the holiday period is, it looks like, January 6th.

Is there any concern about pushing back that far, Ms. Sabharwal?

MS. SABHARWAL: No. There is not.

THE COURT: Okay. All right. So if we push the deadline of fact discovery to January 6th, 2025, we could then seek a certification of the close of fact discovery January 13th, 2025. I just want to check one thing and make sure -- I believe MLK day is the 20th. Yeah. MLK day is the 20th. Okay. So that date is fine for this deadline to certify the close of fact discovery.

Then your dispositive motion deadline, should the case be heading to motions, would need -- your dispositive motions would need to be initiated within 30 days of the certification of the close of fact discovery. Those would, of course, need to be initiated in accordance with Judge Gonzalez's rule. At the moment, the 30th day would be February 12th or the 13th. But I can give you until that Friday. Well, no. But that's also Valentine's day. I don't know if you want to be filing in this case on Valentine's day.

Mr. Lax, what is your preference for a dispositive motion deadline?

MR. LAX: You know, February 13th or -- I defer to the Court.

THE COURT: Okay. Well, we'll give you until February 14th. It's a Friday. You're always free to file early.

And then to the extent that there is no dispositive motions filed, the joint pretrial order deadline would be 30 days after that. And so we'll set that as March 14th of 2025. Is there anything else we should attend to today?

Mr. Lax?

MR. LAX: I don't believe so, Your Honor.

THE COURT: Okay. Ms. Sabharwal?

MS. SABHARWAL: I just want some clarity from Your Honor about which of my clients are going to the bank --

THE COURT: I don't know whose --

MS. SABHARWAL: -- to get the record --

THE COURT: -- bank records exist. I don't know what names these banks accounts are under. I don't know if your clients were engaged in joint banking. So I really am not in a position to answer that question.

MS. SABHARWAL: The reason I'm asking is that Zuha and Laraib were minors during the time that some of these allegations occurred. And I can certainly explain this to Mr. Lax in a further call.

THE COURT: So, you know, look, if your clients were minors at the time and they have no responsive records, I'm sure Mr. Lax will understand that and follow the facts where they go. That doesn't mean that your clients are necessarily insulated from discovery for all purposes. What if your clients decided to squirrel their assets away in

their daughter's account when -- and then changed it over to her name once she became an adult? I have no idea, Ms. Sabharwal, what the evidence may lead to. So I certainly am in no position to excuse anybody from discovery. That's what discovery is for. To figure out the facts.

MS. SABHARWAL: I understand. But Mr. Lax in previous phone to calls to me and even in his communication to the Court indicated that the money was being funneled between Naila Butt and Mohammad Butt's bank accounts. So my position is that Laraib and Naila [sic] should not be required to turn over their banking statements.

THE COURT: I do not have a motion before me about what Mr. Lax's discovery requests are, nor do I know the facts. I am not giving an advisory opinion with regards to discovery requests that I don't even know are drafted, Ms. Sabharwal.

MS. SABHARWAL: I understand. There is one other thing I wanted to point out, because I do have the document pulled up. Interrogatory 3, I did respond to it. I just realized I didn't leave a space between my response and the actual objection. But I did respond indicating the entities that my client Mohammad Butt owned.

THE COURT: It doesn't say anything in that response with regard to what he did. It doesn't say whether he held a management, directorial, officer, supervisory role.

It doesn't answer the question of whether he held the authority to hire or fire employees. I mean, if I were in Mr. Lax's shoes, I would not find those -- those two sentences that provide names of businesses to be responsive.

MS. SABHARWAL: Okay.

THE COURT: I'm sorry. I just don't see it. So please be a little more generous. Parsimony in your interrogatory responses will only lead to phone calls like this.

MS. SABHARWAL: Yes, Your Honor.

THE COURT: All right. Thank you all for your letter. They were very informative. Good luck working through the issues and trying to resolve it. We will set a discovery schedule according to the dates we just discussed. Should the parties believe that they need an extension to those dates and deadlines, you may certainly file a letter motion ECF. Please indicate in your letter motion whether it is on consent, the request to the extension, which dates are impacted, and the justification of the good cause for the request for the extension. I know this case is complicated. I'm not inviting you to extend the discovery schedule, but I recognize that things could get complicated. So please just keep me posted if you anticipate problems with the schedule.

And in the meantime, you know, I will assume that no news is good news if we are not hearing from the parties.

But you, of course, remain welcome to request round two of a settlement conference or maybe it would be round three. I think we had the original call -- the original conference and then a call. At any time as well as a referral to mediation. You can certainly just drop a short letter on the docket requesting that relief, and we'll get on the calendar to schedule something as quickly as we can.

So with that, I think we're done for the day.

Mr. Lax, is there anything final?

MR. LAX: No, Your Honor. That is all. Thank you for your time.

THE COURT: Thank you.

Ms. Sabharwal, anything final?

MS. SABHARWAL: No, Your Honor. Thank you.

THE COURT: All right. Thank you. Bye-bye.

(Proceedings adjourned at 11:56 a.m.)

TRANSCRIBER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

July 23, 2025

Nina Winters

Nina Winters DATE

Legal Transcriber